**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

| | |
|---|---|
| GUILLERMO QUINONES, REG. #22965-004 | PLAINTIFF |
| V.   2:13CV00099-JLH-JJV | |
| ERIC HOLDER, U.S. Attorney General, Department of Justice; *et al*, | DEFENDANT |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the new hearing in the form

1

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court<br>
Eastern District of Arkansas<br>
600 West Capitol Avenue, Suite A149<br>
Little Rock, AR 72201-3325

## DISPOSITION

**I.   INTRODUCTION**

Plaintiff, Guillermo Quinones, is a federal inmate at the Forrest City Federal Correctional Institution (FCI).[1] He filed this cause of action on July 30, 2013, alleging Defendants: 1) violated his First Amendment rights by retaliating against him for filing grievances against some of them; 2) violated his Eighth Amendments rights to be free from the infliction of cruel and unusual punishment; and 3) conspired to violate his civil rights. (Doc. No. 4.)

Plaintiff's cause of action arises from alleged surgery on his wrong eye and a stitch that was left behind after the surgery. The remaining Defendants are Warden Outlaw, Associate Warden Heuett, Unit Manager Dube-Gilley, Dr. Prince, Dr. Molina, and Warden Haynes. Defendants have moved for summary judgment raising a number of defenses. (Doc. No. 60.) Plaintiff has not responded. After careful review of the Amended Complaint, Motion for Summary Judgment, and Brief in Support, for the following reasons, the Court concludes the Motion should be granted.

---

[1] Plaintiff was convicted in December 1998 in the Southern District of Florida for conspiracy to distribute cocaine, and sentenced to 240 months incarceration in April 1999. (See *Quinones v. United States*, 2:13cv19, Doc. No. 19-1 at 2.) He transferred from FCI Miami to FCI Forrest City in April 2007. (*Id.*, Doc. No. 24 at 3.)

## II. AMENDED COMPLAINT

Plaintiff's Amended Complaint states:

On March 30, 2009, Plaintiff was taken to the Offices of Defendant G. Edward Bryant Jr. MD an Ophthalmologist and Eye Surgeon who's offices are located at 330 Dillard, Forrest City, Arkansas. Dr. Bryant performed the operation on Plaintiff's left eye instead of the right. Unbeknownst to Plaintiff, Defendant Bryant placed suture stitches after the operation in his right eye. Plaintiff was returned back to the Institution with excruciating pain in the right eye and compounded with the discomfort he was suffering by the eye operation. Plaintiff was never taken back to have the sutures removed by Defendant Bryant nor did Defendant Bryant or the other Defendants herein insure[] that Plaintiff was returned back to his offices although he was experiencing a high degree of pain in both eyes.

The suture stitches remained in Plaintiff's left eye and were not discovered until August 30, 2012, over four (4) years later when Plaintiff was examined by Dr. Thomas C. Gehelfinger MD, and Ophthalmologist and Eye surgeon who is not a defendant on the instant case and who's offices are located at 6485 Poplar Avenue, Memphis Tennessee, 38119, who removed the suture from Plaintiff's left eye.

At the time of the instant complaint, Plaintiff['s] vision in his left eye has dramatically diminished.

(Doc. No. 4 at 5-6.)

With regard to the specific constitutional claims he makes, Plaintiff states:

### A. First Amendment Claim

Defendants. . . were responsible for Plaintiff's injuries, suffering and pain and their indifference and delay to provide expedient and urgent medical attention was in retaliation against Plaintiff for filing administrative grievances against some of these Defendants for intentionally refusing to provide urgent and necessary medical surgery to remove cataracts from Plaintiff's right eye in retaliation for a separate grievance filed by Plaintiff against some of [these] Defendants in Quinones v. Outlaw, Case No. 2:11-cv-00122-JMM, still pending in the District Court for the Eastern District of Arkansas.

(*Id.* at 13-14.)

### B. Eighth Amendment Claim

Defendants refusal to allow Plaintiff to receive the medically necessary surgeries in an expeditious manner to remove the cataracts from Plaintiff's eyes which caused the entirely [*sic*] loss of eyesight in his right eye and decrease of vision in his left eye as

> [a] result of medical malpractice, was [deliberate], willful, and intentional and otherwise deliberately indifferent to Plaintiff's medical needs, care and treatment of both eyes. Further, Defendants['] acts also served in purpose to cause pain and suffering and discomfort to Plaintiff otherwise designed to punish Plaintiff for filing valid grievances.

(*Id.* at 17.)

### C. Civil Rights Conspiracy

> Defendants. . . agree[d] on one hand and Dube-Gilley agreed on the other hand to commit an overt act in furtherance of the conspiracy to violate Plaintiff's constitutional and civil rights.

(*Id.* at 19.)

### III. FACTS

Plaintiff initially complained of vision problems and pain in July 2008. (Doc. No. 23 at 42.) He was examined by Dr. Dale Morris, an optometrist, on September 19, 2008, and diagnosed with a cataract in his right eye. He was seen by other medical staff (*Id.* at 47-51) and ultimately examined by a consulting ophthalmologist, G. Edward Bryant, M.D., in December 2008. (*Id.* at 52.) On March 27, 2009, Plaintiff was seen by Dr. Andre Molina who diagnosed an acute angle-closure glaucoma and an unspecified cataract. (Doc. No. 23 at 54-55.) Dr. Molina noted that Plaintiff was scheduled for surgery in a few days. (*Id.*) Dr. Bryant was to perform the surgery on Plaintiff's right eye, but on arrival he complained about decreased vision in his left eye. (*Id.* at 148.) On examination, Dr. Bryant noted a marked increase in the left eye cataract and the optic nerve in the right eye appeared damaged from glaucoma. (*Id.*) Plaintiff had "long term vision loss in the right eye." Dr. Bryant says he received Plaintiff's permission to perform cataract surgery on his left eye (*Id.*) and performed it on March 30, 2009. (*Id.* at 56.)

Plaintiff received follow up care at FCI on March 30, 2009. (*Id.* at 60-65.) He appeared at sick call for right eye pain on June 4, 2009, (*Id.* at 70) and he was treated for right eye pain on

June 15, 2009. (*Id*. at 71-73.) Clinic notes indicate he was recommended for cataract surgery. (*Id.*)

Plaintiff was again treated for eye pain on July 1, 2009, and he was seen by a consulting ophthalmologist on July 23, 2009. (*Id*. at 72-77.) He underwent right eye cataract surgery on August 4, 2009, (*Id*. at 85-87) and received follow up care at FCI on August 5, 2009. (*Id.* at 86-88.) Believing his follow up care was unsatisfactory, Plaintiff filed an Inmate Request to Staff on August 10, 2009. He complained that he waited two days before receiving prescribed medications and he was experiencing pain and loss of vision in his right eye. (*Id*. at 30.)

Plaintiff was examined on August 31, 2009, by a physician's assistant who noted that he complained of poor vision. (*Id*. at 102-3.) October 22, 2009, treatment notes report that Dr. Morris examined Plaintiff and noted, "patient lost vision to the right eye due to glaucoma . . . No follow up recommended." (*Id.* at 112.)

On February 5, 2010, a nurse examined Plaintiff for complaints of hypertension and right eye pain and twitching. (*Id.* at 118.) Treatment notes state an ophthalmology consult was pending. (*Id*.) Optometrist Dr. Morris saw Plaintiff on March 19, 2010, and confirmed the need for referral to an ophthalmologist (*Id.* at 121-123) but it appears this never occurred.

Plaintiff was seen by a nurse for right eye pain on September 5, 2011, and the next day for vision problems. (*Id*. at 131-135.) Treatment notes state Plaintiff reported to the nurse that he "had cataract surgery 2 years ago . . . [and] has been chronically blind in right eye since surgery." (*Id*. at 134.) Then, on July 8 and 9, 2012, he was treated for blurry vision in his left eye. (*Id*. at 151-57.) An ophthalmology consult was again recommended and he was seen on August 30, 2012, by ophthalmologist Thomas C. Gettelfinger, M.D. The doctor noted Plaintiff had cataract surgery and was blind in his right eye. (*Id*. at 160-61.) Dr. Gettelfinger discovered and removed a suture from Plaintiff's left eye that was likely causing discomfort. (*Id*.) He concluded there was no evidence of glaucoma, but noted Plaintiff's right eyesight was "gone [because] of past glaucoma." (*Id.* at 161.)

**IV.  MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'") (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995).

A nonmovant has an obligation to present affirmative evidence to support his claims.  *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993).  A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment.  *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994).  Moreover, *pro se* complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But if the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  *See Celotex*, 477 U.S. at 322.

**A.  Exhaustion**

Defendants first argue that Plaintiff has failed to administratively exhaust all of his claims and, therefore, his claims should be dismissed.  (Doc. No. 61 at 2-6.)  The failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden of pleading and

6

proving. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). The PLRA's exhaustion provision specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Exhaustion is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 922-923. The PLRA merely requires compliance with prison grievance procedures to properly exhaust. *See id*. at 922-23. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*. at 923-924.

The Bureau of Prisons (BOP) Administrative Remedy Program allows inmates to seek formal review of issues related to any aspect of their confinement. 28 C.F.R. § 542.10. Inmates must first seek informal resolution by presenting the issue to the prison's staff. 28 C.F.R. § 542.13. If the inmate is not satisfied with informal resolution, the inmate may submit a Request for Administrative Remedy to the Warden. *Id.* If the Warden's response fails to satisfy the inmate, the inmate is given twenty days to file an appeal with the Regional Director. 28 C.F.R. § 542.15. If still dissatisfied, the inmate may file an appeal to the General Counsel - the final step in the

administrative remedy process. *Id.*

Plaintiff previously filed a § 1983 cause of action about these exact claims and they were dismissed for failure to exhaust. *Quinones v Outlaw, et al.*, 2:11cv00149-JTR. In dismissing his case, the Court explained in detail how Mr. Quinones failed to exhaust his claims. (*Id.* at Doc. No. 36.)

His case was dismissed without prejudice on September 14, 2012, and apparently in response to the dismissal, Plaintiff initiated a grievance on September 19, 2012. (Doc. No. 62-1 at 25.) Yet he only complained about continued eye pain because of the stitches that were left behind and he requested only to be "IMMEDIATELY taken to the specialist to have them removed." (*Id.*) Jill Dube-Gilley responded that he had been seen by an ophthalmologist on August 30, 2012, who removed a suture left from the previous surgery, that no follow up treatment was ordered, that he was again seen for eye pain on September 18, 2012, and he was told to return to the clinic the next day but failed to show for the appointment. (*Id.*) He was advised he could return to "sick call" if he experienced more pain. (*Id.*)

Defendants argue that this latest grievance - while exhausted - fails to include the claims he raises in this lawsuit. (Doc. No. 61 at 4-6.) Defendants state, "Despite the admonition from the Court in its dismissal of Case No. 2:11CV00149 JTR, the Plaintiff has subsequently filed only one Administrative Remedy Request, and two appeals thereof, regarding his eye care." (*Id.* at 4.) They note the only resolution sought was removal of the stitch. (*Id.*)

The Court finds Defendants' argument to be persuasive. Plaintiff was provided ample opportunity to properly address his constitutional claims through the administrative remedy process. Yet, he only sought resolution to the stitch left behind in his eye - a matter that had already been resolved. He made no mention at all of retaliation or conspiracy to violate his civil rights. And

while it could *possibly* be construed that his grievance addresses his Eighth Amendment claim, a close examination of the grievance and his Amended Complaint leads the Court to conclude it would be improper to make that much of a stretch.

Mr. Quinones may perceive the exhaustion requirement to be some unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the reform process. The United States Court of Appeals for the Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson v. Jones*, 340 F.3d 624, 626-27 (8th Cir. 2003); *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages "disregard of [the agency's] procedures.'") (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)); *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998) (quoting 141 CONG. REC. H1472-06, *H1480 (daily ed. Feb. 9, 1995)) ("Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court'"). Accordingly, Mr. Quinones' claims should be dismissed without prejudice for failure to exhaust his administrative remedies.

   **B.**  **Time Bar, Respondeat Superior, Qualified Immunity, and Merits**

Although the Defendants have offered alternative arguments for dismissal, pursuant to *Johnson v. Jones*, 340 F.3d 624 at 627-628 (8th Cir. 2003), once a determination is made that the Plaintiff's claims were not exhausted, the Court is required to dismiss them without further consideration. Therefore, the Court declines to address these additional arguments.

## V.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 60) be GRANTED.

2. This cause of action be dismissed without prejudice.

3. The Court certify that an *in forma pauperis* appeal from an Order and Judgment dismissing this action would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

DATED this 30th day of March, 2015.

                                                                          _____
                                                                          JOE J. VOLPE
                                                                          UNITED STATES MAGISTRATE JUDGE